IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, EX REL., | ) ) ) |
| ROBERT KEITH BENDER, | ) ) |
| Plaintiff, | ) ) |
| v. | ) Civ. No. 06-01432 (GK) |
| NORTH AMERICAN TELECOMMUNICATIONS, INC., et al., | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PURSUANT TO F.R.CIV.P. 12(b)(6) FILED BY DEFENDANTS
NORTH AMERICAN TELECOMMUNICATIONS, INC., CHANG D. HWANG,
JOHN G. CAROTHERS, CAPITOL TECHNOLOGY SERVICES, INC.,
HEYS S. HWANG, AND JAMES W. RUEST**

This memorandum in support of a motion to dismiss pursuant to F.R.Civ.P. 12(b)(6) is filed on behalf of six of the seven defendants -- North American Telecommunications, Inc. (NATI), Chang D. Hwang, John G. Carothers, Capitol Technology Services, Inc. (CTSI), Heys S. Hwang, and James W. Ruest. The seventh defendant, PAE Government Services Inc, is separately moving to dismiss.

The grounds for this motion are:

(1) The complaint fails to allege false claims within the meaning of the False Claims Act, 31 U.S.C. §3729.

(2) The complaint fails to allege fraud with the particularity required by F.R.Civ.P. 9(b).

1

(3)  The complaint is barred in part by the applicable limitations period.

**I.  Facts**

The following facts are alleged in the complaint.[1]

NATI had an Operations and Maintenance contract with the United States Department of Agriculture which was in effect from October 1, 1997 through March 31, 2003.  After that, CTSI entered into an Operations and Maintenance contract with the USDA, effective from April 1, 2003 to the date of the complaint.  The contracts required NATI and CTSI to maintain and repair certain mechanical and electrical systems (heating, ventilation, air conditioning, plumbing) in four USDA buildings.

The individual defendants are employees and/or owners of NATI and/or CTSI.  PAE Government Services, Inc. was a subcontractor of CTSI.

The Relator, Robert Bender, is an electrician.  He was employed by NATI and worked on the USDA contract while the NATI contract was in effect.  He was not an employee of CTSI or PAE.  He brings this case on behalf of the United States, alleging multiple violations of the False Claims Act (FCA).  The United States, acting through the Department of Justice, declined to intervene.

Bender alleges five violations of the FCA. They are:

Count I alleges that NATI claimed bonuses based on response times for repairs although it was not entitled to such bonuses.

Count II alleges that NATI misrepresented non-reimbursable Basic Service repairs to be reimbursable Minor Repairs.

---

[1]  Because this motion is brought pursuant to F.R.Civ.P. 12(b)(6), we must assume the truth of the properly pleaded allegations.  But for this rule, we would demonstrate the utter falsity of the allegations.

Count III alleges that NATI employed unqualified workers.

Count IV alleges that NATI billed for overtime work that was excluded by the contract.

Count V alleges that NATI did not perform some of the services required by the contract.

Each count alleges wrongful conduct by "defendants," but, as we will demonstrate, the allegations about defendants other than NATI are conclusory or irrelevant. Even as to NATI, the allegations are vague and lack the particularity required by F.R.Civ.P. 9(b) for FCA complaints.

## II.  The False Claims Act

The False Claims Act allows a private relator to sue on behalf of the United States where a defendant "presents, or causes to be presented, to an officer or employee of the United States Government a false or fraudulent claim for payment or approval," or makes or causes to be made "a false record or statement to get a false or fraudulent claim paid or approved by the Government."  31 U.S.C. § 3729 (a)(1) and (2).

The *sine qua non* of a cause of action under the statute is that the suit be founded on a false or fraudulent claim.   A private individual has no standing or statutory authorization to sue on behalf of the United States for breach of contract or other tort or contract claim.  1 J. Boese, Civil False Claims and Qui Tam Actions (3rd ed. 2008) §2.11("Of course, these alternative common law causes of action [e.g., unjust enrichment, breach of contract, conversion, common law fraud, constructive trust and disgorgement, and payment under mistake of fact] are not available to *qui tam* relators, who are empowered to sue on behalf of the government through the FCA only").

Courts addressing FCA cases make an important distinction. The FCA does not provide relief merely because a government contractor breaches its contract or even performs the contract dishonestly. *United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F.Supp.2d 25, 70 (D.D.C. 2007). There must a false claim in order for the FCA to provide relief. Even if the complaint alleges an illegal act, there is no jurisdiction for a private relator to bring a *qui tam* action unless the illegal act is a false or fraudulent claim. *U.S. ex rel. Barrett v. Columbia/HCA Healthcare Corp.*, 251 F.Supp.2d 28, 37 (D.D.C. 2003). As explained in *U.S. ex rel. Ervin and Associates, Inc. v. Hamilton Securities Group, Inc.*, 370 F.Supp.2d 18, 50-51 (D.D.C. 2005):

> To prove a False Claims Act allegation, therefore, a relator must produce evidence that the defendant actually submitted false demands for payment or submitted false records or statements in order to get a false claim paid. *See United States ex rel. Ortega v. Columbia Healthcare, Inc.,* 240 F.Supp.2d 8, 18 (D.D.C.2003). It is not enough " 'to describe a private scheme in detail but then to allege simply and without any stated reasons for his belief that claims requesting illegal payments must have been submitted.' " *United States ex rel. Aflatooni v. Kitsap Physicians Servs.,* 314 F.3d 995, 1002 (9th Cir.2002) (citation omitted).

As we will demonstrate, most of the allegations in the complaint allege breaches of contract or other wrongful conduct, but *not* a false claim.

The complaint also must allege materiality. A relator fails to state a claim where there is a false claim, but it does not cause the government to make a payment. The complaint must allege that the government conditioned payment on the false statement. *United States ex rel. Marcy v. Rowan Companies, Inc.*, 520 F.3d 384, 389 (5th Cir. 2008).

Nor is it sufficient merely to intone the term "false claim," if the allegation is purely conclusory. A bare-bones, conclusory allegation of a false claim fails to meet the

4

pleading standards in a False Claims Act case. The allegations of false claims are governed by F.R.Civ.P. 9(b), which, as we will show below, requires a level of particularity that this complaint does not even approach. In fact, conclusory allegations of false claims do not even meet the more lenient standards of F.R.Civ.P. 8. *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1964 -1965 (2007) ("a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (internal quotations omitted).

### III.  The Complaint Fails to Allege False Claims

Because the FCA allows a relator to sue only where there is a false or fraudulent claim, the obvious starting point in any motion to dismiss pursuant to F.R.Civ.P. 12(b)(6) is whether the complaint alleges a false or fraudulent claim.

The complaint here is defective in that initial step. There are two major deficiencies. First, the complaint alleges various breaches of contract, but except for the vaguest, most conclusory assertions, fails to allege in counts III, IV and V that anyone made a false claim.[2] Second, there are no allegations even remotely suggesting false claims by most of the defendants with respect to any of the counts.

**A.  No False Claims.** Count III, consisting of paragraphs 85-94 and 155-59, alleges that the defendants had employees who did not meet the qualifications required under the contract. In paragraph 159, Relator sets forth the essence of the allegation. It is that work was supposed to be performed by licensed personnel, but was in fact

---

[2]  We address Counts I and II in connection with the failure to allege fraud with particularity. That is, there is a conclusory allegation in each count of a false claim, but the allegation lacks the specific detail required by the rules.

5

performed by non-licensed personnel. But other than a boilerplate conclusory assertion of a false claim, there is no allegation that the defendants misrepresented that any employee was licensed. Thus, there is no allegation of a false claim, and the claim under the False Claim Act cannot stand.

Count IV, paragraphs 95-127 and 160-165, alleges that the defendants sought and received overtime payments for work that did not qualify for overtime payments. It further alleges that the defendants gave their employees compensatory time off rather than paying them overtime. There is no allegation that either of these practices was effectuated through false claims. In fact, the complaint alleges just the opposite. The complaint alleges that NATI requested overtime from the Contracting Officer's Representative (paragraphs 106, 109, 110), giving a truthful explanation of why overtime was requested. The overtime may or may not have been allowed by the contract, but Bender's own allegation contradicts any suggestion of a false claim. And, of course, the allegation that NATI gave employees compensatory time *instead* of paying overtime contradicts any suggestion that NATI used a false claim to get the government to pay overtime.

Count V, paragraphs 128-141 and 166-171, alleges that the defendants did not perform some of the services required under the contract. There is, however, no allegation that defendants made any false statements about the extent to which they performed required services. That is, there is no allegation of a false claim.

Because there are no allegations of any false claims with respect to Counts III, IV and V, those counts must be dismissed as to all defendants.

### B.  No Allegations of False Claims by the Defendants Other Than NATI.

There must be allegations of false claims against every defendant; any defendant for whom there is no allegation of a false claim is entitled to be dismissed pursuant to F.R.Civ.P. 12(b)(6) for failing to state a claim upon which relief can be granted.  *United States ex rel. Dhawan v. New York City Health and Hospital Corporation*, 2000 U.S. Dist. LEXIS 15677 (S.D.N.Y. 2000).  The relator must specifically allege which defendant engaged in which practice.  Lumping them together is not sufficient.  *United States ex rel. Grynberg v. Alaska Pipeline Co.*, 1997 U.S. Dist. LEXIS 5221 (D.D.C. 1997).  To the extent any allegations of false claims can be divined from the complaint, no such allegations are made as to any defendants other than NATI.[3]  The scattered references to the other defendants do not allege false claims.

In Count I, Relator alleges that NATI "locked in the times" to make it appear that repairs were made quickly but there is no allegation that any defendant other than NATI engaged in this conduct.[4]

The references in Count I to the other defendants fail to allege any relevant false claim.  It is, for example, alleged that defendant Carothers instructed an employee to list maintenance as having been performed on the last day of the month (paragraph 60), but that has nothing to do with the allegation in Count I, which is limited to a contention of false response time for *repairs*, not maintenance.  See, e.g., paragraph 143: "defendants knowingly, willfully and recklessly claimed bonuses under the contracts for

---

[3]    The claims against NATI are defective for reasons discussed elsewhere.
[4]    As shown below, the vague allegation that NATI "locked in" times is too indefinite to meet the standards of F.R.Civ.P. 9(b).  Here, our position is that the allegation of "locked in," vague as it is, relates only to NATI, and there is no allegation whatsoever of a false claim by any other defendant.

7

Operations and Maintenance based on response times and completion times **for repairs**…." (emphasis added)  The sole allegation against Carothers fails also because there is no allegation either (1) that the maintenance was not in fact done by the end of the month or (2) that a false statement of performing maintenance before the end of the month would have any impact on government payments.  Thus, the reference to Carothers fails to allege a cause of action against him under the FCA.  No allegation is made as to any other defendant.

In Count II, Relator alleges in conclusory terms that NATI misrepresented non-reimbursable Basic Service repairs to be reimbursable Minor Repairs (paragraph 66).  There is no allegation that any defendant other than NATI made any such false statements, and thus the complaint fails to state a claim against the defendants other than NATI.

The only reference to a defendant other than NATI in Count II is in paragraphs 79-80, in which it is alleged that defendant Ruest wrote a memorandum stating in part that NATI was pushing to get more Minor Repair Work Orders.  Of course, pushing to get more compensable work is legitimate, and does not intimate any false claim.  There is no allegation, direct or by reasonable implication, that Ruest made a false claim about Minor Repair Work Orders.

The allegation in Count III is that unqualified workers were used in breach of the contract.  As shown above, this does not allege a false claim, even as to NATI and CTSI.  Moreover, there is no allegation of falsity relating to any of the other defendants.  The complaint does not allege that the other defendants knew of the allegedly unqualified workers, or made a false representation about them.

Bender alleges in Count IV that instead of giving employees different shifts to avoid overtime, NATI gave the employees compensatory time. There is no allegation of a false statement about the compensatory time. Apart from the failure to allege a false claim, there is a paucity of allegations concerning the defendants other than NATI. Ruest is alleged (paragraph 106) to have requested overtime from the Contracting Officer's Representative, but that does not allege a false claim by him. Carothers is alleged (paragraph 122) to have instructed an employee to take compensatory time.[5] Here also, there is no allegation of any false claim by Carothers, and no plausible way that instructing an employee to take compensatory time instead of billing for overtime can cause the government to pay anything. No allegations are made as to the other defendants.

Count V alleges that NATI did not perform some of the required services, but does not allege that it made a false claim. No allegation is made concerning CTSI except the completely conclusory allegation that it continues NATI's practices (paragraph 138). No allegations are made as to any other defendant.

Where the complaint does not even allege a false claim as to any particular defendant, even in conclusory terms, it must, of course, be dismissed for failing to state a claim upon which relief can be granted.

---

[5] The evidence on this count will show the utter bankruptcy of the complaint. NATI tried to establish new shifts for the employees, which would have avoided the need for overtime. That is what Bender contends NATI should have done. Paragraphs 99-100. But when NATI tried to establish new shifts, Bender refused to work a different shift, and filed a grievance with the union to prevent NATI from instituting new shifts. Rather than incite a union dispute, NATI agreed to leave the employees on their normal shift.

**IV. The Complaint Fails to Allege the False Claims with Particularity**

Suits brought under the False Claims Act are controlled by F.R.Civ.P. 9(b), which requires that fraud be alleged with particularity. *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256-59 (D.C.Cir. 2004). The *Williams* decision is clearly in the mainstream of FCA decisions. *United States ex rel. Karvelas v. Melrose-Wakefield Hospital*, 360 F.3d 220, 228 (1st Cir. 2004) ("every circuit court that has addressed this issue has concluded that the heightened pleading requirements of Rule 9(b) apply to claims brought under the FCA"), citing decisions from the 2nd, 3rd, 4th, 5th, 6th, 9th 11th, and D.C. Circuits. The requirements of F.R.Civ.P. 9(b) are strictly applied.

The many cases addressing the sufficiency of the complaint in a False Claims Act suit have set forth the specific allegations that must be included. In brief, the allegations must be sufficiently specific that the defendants "can defend against the charge and not just deny that they have done anything wrong." *United States ex rel. McCoy v. California Medical Review Board*, 723 F.Supp. 1363, 1372 (N.D.Cal. 1989).

Thus, a relator must specifically allege the time, place and content of the false claims, a clear statement of the fact that was misrepresented, the individuals involved in the fraud, and what was retained or given up by the government as a consequence of the fraud. See, e.g., *Williams*, 389 F.3d at 1256-57. The relator must state "(1) precisely what statements were made in what documents or oral representations or what omissions were made, (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *United States ex rel.*

*Clausen v. Laboratory Corporation of America, Inc.*, 290 F.3d 1301, 1310 11th Cir. 2002). Merely reciting names of people involved is not enough; the complaint must state specifically the role of each individual. *Williams*, 389 F.3d at 1257. Nor is it sufficient to group the defendants together without specifying what each did. 2 J. Boese, Civil False Claims and Qui Tam Actions (3rd ed. 2008) §5.04(B)[3] (conclusory allegations that allegations of false claims by some defendants must apply to other defendants are rejected). These requirements are interpreted strictly. An allegation that false claims continued through 2002 was inadequate in *Williams* because there was no start date given. 389 F.3d at 1256-57.

Of course, because 31 U.S.C. § 3729 (a)(1) imposes liability only where the defendant "knowingly" presents a false claim, the complaint must allege with particularity that the defendant acted knowingly. *U.S. ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 741 (7th Cir. 2007) (must allege that "the defendant knew it was false"); *U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F.Supp.2d 25, 57 (D.D.C., 2007) ("which the defendant knew was false").

The complaint does not come close.

In Count I (paragraphs 44-64 and 142-47), Relator alleges that NATI was entitled to a bonus under the contract if it met certain requirements for responding to service calls and completing the service. He alleges that NATI "frequently locked in the times listed on the service call tickets so that they would appear to show an appropriate response time in order to satisfy the bonus requirements…." Paragraph 47. This fails to provide the needed specificity. The complaint does not disclose the precise statements Relator contends are false. Nor is it stated whether the statements were

oral or in writing, or when or where they were made. The person responsible for making the statement is not identified, nor does the complaint disclose to whom the statement was made. Relator does not state the manner in which the statement is false, or that the USDA was misled, or that anything was received as a consequence of the misrepresentation. All that is provided is a series of conclusory assertions that defendants "frequently" made false statements. The allegation that the defendants acted "knowingly" is purely conclusory, and based on no discernable facts. That is not sufficient.

In Count II (paragraphs 65-84 and 148-54), Relator alleges that NATI made false claims by misrepresenting non-reimbursable Basic Service repairs to be reimbursable Minor Repairs (paragraph 66). This conclusory allegation is inadequate. The Relator does not reveal whether there was one false claim or many. He does not disclose who made each false claim, when each false claim was made, to whom, whether it was oral or written, the content of the claim, or its effect. There is a conclusory allegation that the defendants acted knowingly, but no factual basis is alleged, and no way to determine which defendants were knowledgeable about which aspect of the so-called false claim.

The failure to make specific allegations leaves defendants unable to frame a response, as demonstrated by paragraphs 77 and 78. In paragraph 77, Relator alleges that in July 2002 NATI claims to have completed 17 MRWO projects. The projects are not identified. In paragraph 78, Relator alleges that seven of those did not qualify for reimbursement, but he does not identify which seven did not qualify, or why they did not qualify. There is no allegation that the USDA paid for those seven claims, or how much it paid, or why. There is no allegation of a false claim about those seven projects. Nor

12

is there any allegation that any of the defendants knew that the projects did not qualify for reimbursement.

Similarly, in paragraph 83, Relator alleges that he personally witnessed NATI grouping jobs together. Although he contends this was conduct he personally witnessed, he fails to state which jobs were grouped together, by whom, when, to whom the grouping was misrepresented, or the financial impact of the grouping. In short, none of the specifics required by F.R.Civ.P. 9(b) is provided.

The allegation in Count III (paragraphs 85-94 and 155-59) is that NATI used non-licensed employees although the contract requires licensed employees. As noted above, there is no allegation of a false claim, other than the completely conclusory assertion that the defendants certified the work. Because there is no allegation of a false claim, it necessarily follows that the complaint does not provide the necessary specificity to satisfy F.R.Civ.P. 9(b). The Relator failed to identify a false claim with specificity, to explain why it was false, who made it, to whom, when, whether it was oral or in writing, who knew about it, and how it caused the government to make a payment.

As shown above, Count IV (paragraphs 95-127 and 160-65) fails to allege any false claim, and by necessary extension, fails to allege a false claim with the requisite specificity. Indeed, the allegations tend to suggest either that (1) NATI made truthful disclosures to the government in order to receive overtime reimbursement and, inconsistently, that (2) NATI did not seek reimbursement of overtime because it gave its employees compensatory time off rather than overtime payments. These two allegations contradict any notion of a false claim.

Count V (paragraphs 128-41 and 166-71) alleges a failure to provide services, but as noted above, it does not allege a false claim. It does not provide any of the specifics that would be necessary to support a complaint alleging a false claim.

In none of the five counts is there an allegation of materiality.

Bender's failure to allege with particularity is particularly glaring because he repeatedly asserts that he personally witnessed the alleged conduct. There can be no excuse for a failure to describe with particularity conduct the relator claims he actually witnessed. In a few instances (e.g., paragraphs 64, 126 and 138), Bender asserts that he has "information" that the conduct he witnessed is continuing under CTSI. A relator cannot avoid the need to plead with particularity by referring to unspecified "information." Reliance on information in a False Claims Act case requires a specific allegation that the facts are uniquely in the defendants' control and a statement of the facts upon which the information is based. *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1279, n.3 (D.C.Cir. 1994). Bender alleged neither.

In short, as to none of the five counts does the Relator provide the specific information mandated by F.R.Civ.P. 9(b) and the many FCA decisions addressing the need to allege the circumstances with particularity.

**V.  Limitations Bars the Claims**

There are two potential limitations periods in a *qui tam* action. The normal period is six years. 31 U.S.C. § 3730(b): "A civil action under section 3730 may not be brought- (1) more than 6 years after the date on which the violation of section 3729 is committed." Because the complaint was filed on August 14, 2006, limitations pursuant to this provision bars any claims that accrued prior to August 14, 2000.

There is a second, potentially longer limitations period which allows the government to bring suit not more than "3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances." 31 U.S.C.A. § 3731. There is some uncertainty whether that alternative provision applies where the government declines to intervene, as is the case here. Compare *U.S. ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd.*, 6 F.Supp.2d 263, 265 (S.D.N.Y. 1998) ("By the clear statutory language, the Relator's time is not extended to three years after the United States official learns of the violation. That provision only applies to the government") and *U.S. ex rel. Amin v. George Washington University*, 26 F.Supp.2d 162, 173 (D.D.C. 1998) ("it is the Court's considered judgment that the applicable statute of limitations is 6 years") with *U.S. ex rel. Pogue v. Diabetes Treatment Centers of America,* 474 F.Supp.2d 75 (D.D.C. 2007). It is not necessary to resolve the proper interpretation of the statute in this case because the Relator concedes that the government had knowledge of the material facts as early as 1999, and that pre-dates the filing of the complaint by more than 6 years. Complaint ¶ 38. Thus, the normal 6 year limitations period is the longer of the two alternatives.

The complaint fails to describe the alleged false claims with specificity or to allege when the false claims accrued. It is apparent from of the complaint, however, that the claims, whatever they are, occurred before the August 14, 2000 cut-off date. The Relator alleges in paragraph 38 that he informed the government of the false claims in 1999. Obviously, he could not have notified the government of things that had not yet

happened, and so this is a clear indication that the claims at issue pre-dated August 2000. The complaint is therefore barred by limitations.

## CONCLUSION

For the reasons stated herein, defendants North American Telecommunications, Inc., Chang D. Hwang, John G. Carothers, Capitol Technology Services, Inc., Heys S. Hwang, and James W. Ruest respectfully request that the complaint be dismissed.

Respectfully submitted,

/s/ David U. Fierst
David U. Fierst - #912899
STEIN, MITCHELL & MEZINES
1100 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C.  20036
W:    (202) 737-7777
Fax:  (202) 296-8312
Email: dfierst@steinmitchell.com
*Attorney for North American Telecommunications, Inc., Chang D. Hwang, John G. Carothers, Capitol Technology Services, Inc., Heys S. Hwang, James Ruest .*

## REQUEST FOR HEARING

Defendants request a hearing on all issues raised herein.

/s/ David U. Fierst
David U. Fierst