**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* : | |
| ROBERT KEITH BENDER, *et al.* : | |
| : | |
| **Plaintiff** : | |
| : | Case No. 1:06CV01432 |
| v. : | |
| : | Judge: Gladys Kessler |
| NORTH AMERICAN TELECOMMUNI– : | |
| CATIONS, INC., *et al.* : | |
| : | |
| Defendants. : | |

**OPPOSITION TO MOTION OF PAE GOVERNMENT SERVICES, INC.
TO DISMISS THE COMPLAINT**

Plaintiff Keith Bender, by his attorney, respectfully opposes the motion of PAE Government Services, Inc. (PAE) to dismiss the complaint as to him, and states as grounds therefore that Plaintiff has stated a claim upon which relief can be granted under the False Claims Act, as well as with particularity the circumstances constituting fraud on the part of PAE as required by Rule 9(b), F.R.Civ.P.  In the alternative, if the Court determines that the Complaint, all or in part, has failed to state a claim with respect to PAE or failed to comply with Rue 9(b), the Plaintiff requests that leave be granted to amend the Complaint within 60 days from the date of such dismissal.

The attention of the Court is invited to the accompanying Memorandum of points and authorities in support of Plaintiff's opposition.

**[signature on following page]**

_/s/ Tarrant H. Lomax_

Tarrant H. Lomax (DC Bar No. 961409)
Tarrant H. Lomax, Esq., P.C.
940 Bay Ridge Avenue
Annapolis, MD 21403
Phone: 410.267.6151
Fax: 410.263.6785
Email: lomaxlaw@comcast.net

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* | : | |
| ROBERT KEITH BENDER, *et al.* | : | |
| | : | |
| Plaintiff | : | |
| | : | Case No. 1:06CV01432 |
| v. | : | |
| | : | Judge: Gladys Kessler |
| NORTH AMERICAN TELECOMMUNI- | : | |
| CATIONS, INC., *et al.* | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S
OPPOSITION THE MOTION OF PAE GOVERNMENT SERVICES, INC.
TO DISMISS THE COMPLAINT**

Plaintiff filed this action under seal on August 14, 2006, pursuant to the False Claims Act, 31 U.S.C. §3729 (FCA), alleging that the various Defendants committed various acts or omissions which constituted a violation of the FCA.  The matter was unsealed in part on September 27, 2007.  Defendant PAE has moved to dismiss the action on four stated grounds[1]:

1.   That the allegations of Counts I, II, IV and V do not involve actions or inactions of PAE.

2.   That the allegations of Count III are devoid of facts sufficient to state a claim as to PAE under the FCA.

3.   That the allegations against PAE fail to allege that the necessary information lies within PAE's control and accompanied by a statement of facts upon which the fraud allegations are based.

---

[1]   The remaining defendants have filed a separate motion to dismiss.

4.    That, with respect to Count III, Bender failed to assert that PAE knowingly caused CTSI to submit false claims and failed to assert facts to support that conclusion.

**FACTUAL BACKGROUND**

North American Telecommunication, Inc. (NATI) was the contractor for operations and maintenance at buildings or facilities of the United States Department of Agriculture (USDA) from October 1, 1997 to March 31, 2003 (Complaint, 9 and 23). The president of NATI is Chang D. Hwang (Chang) (Complaint, 23), John G. Carothers (Carothers) was the Operations Coordinator for NATI (Complaint, 24) at the USDA project, and James W. Ruest (Ruest) was a project manager for NATI (Complaint, 27) at the USDA project.

CTSI was the contractor for operations and maintenance at buildings or facilities of the USDA beginning April 1, 2003 (Complaint, 25).  The president of CTSI is Heys S. Hwang (Heys) (Complaint, 26) and also the daughter of Chang Hwang.  Carothers and Ruest both were employed by CTSI (Complaint, 24, 27) at the USDA project.

PAE was a subcontractor to Capitol Technology Services, Inc. (CTSI) for the performance of electrical work under CTSI's contract with USDA (Complaint, 28).

The gravamen of the complaint is that the Defendants jointly or severally:

1.    Submitted claims to the government for payment of bonuses for work based upon falsely stated response times (Count I).

2

2.     Misrepresented certain services to be reimbursable in order to obtain payment from the government (Count II).

3.     Certified that it utilized employees to perform work under the USDA contract that were not licensed as required by that contract, in order to obtain payment from the government (Count III).

4.     Submitted fraudulent bills to the Government for payment for overtime work (Count IV).

5.     Submitted fraudulent bills to the Government for payment for hours of work which were not performed (Count V).

Specific allegations relating to each count, and based upon the personal knowledge of, or information available to, the Plaintiff, an original source, are set forth in the following respective paragraphs of the Complaint[2]:

Count I    Falsified response time bonuses - Paragraphs 44 - 64.

Count II    Falsified minor repair work orders - Paragraphs 65-84.

Count III Falsified electrician qualifications - Paragraphs 85-94.

Count IV   Fraudulent billing for overtime - Paragraphs 95-127.

Count V    Fraudulent billing for work not performed - Paragraphs 128-141.

Damages are sought from each defendant under each count.

### ARGUMENT

When evaluating a motion to dismiss at this stage of the proceedings, the Court is required to view the complaint in the light most favorable to the plaintiff, <u>Hicks v. Lewis</u>, 901 F.Supp

---

[2]    Each specific Count of the Complaint re-alleges all of the previous allegations.

1567 (M.D.Fla., 1995), to take all material allegations of the
complaint as true and liberally construe those allegations in
favor of the Plaintiff, Bensch v. Metropolitan Dade County, 855
F.Supp 351 (S.D.Fla. 1994), and to draw all reasonable
assumptions in favor of the non-moving party, Scotece v.
Prudential Ins. Co. of America, 322 F.Supp 680 (E.D. Va. 2004).
The court is not to weigh the evidence which might be presented
at trial, Duncan v. Santaniello, 900 F.Supp 547 (D. Mass. 1995),
but rather simply to determine whether the plaintiff has the
legal right to seek relief based on the allegations of the
complaint. Hensche v. New York Hospital-Cornell Medical Center,
821 F.Supp. 166 (S.D.N.Y. 1993). Material allegations of the
complaint must be accepted as true and dismissal is appropriate
only if it appears beyond doubt that the plaintiff can prove no
set of facts in support of his claim that would entitle him to
relief. Schwartzman, Inc. V. Atchison, Topeka & Santa Fe Ry.
Co., 842 F.Supp. 475 (D.N.M. 1993). See, also, U.S. ex rel
Williams v. Martin-Baker Aircraft Co., Ltd., 363 U.S.App.D.C.,
389 F.3d 1251 (2004)

Granting a motion to dismiss a complaint at this stage is a
"drastic remedy" and viewed with disfavor. Acoustica Associates,
Inc. V. Powertron Ultrasonics Corp., 28 F.R.D. 16 (E.D.N.Y.
1961). "A complaint is not subject to dismissal unless it
appears to a certainty that the plaintiff cannot possibly be
entitled to relief under any set of facts which could be proved

in support of its allegations." Seymour v. Union News Co., 217

F.2d 168 (7th Cir. 1954).  Emphasis added.

The FCA provides for liability of a defendant *inter alia* if

the defendant:

> (1) knowingly presents, or causes to be presented, to
> an officer or employee of the United States Government
> or a member of the Armed Forces of the United States a
> false or fraudulent claim for payment or approval;

> (2) knowingly makes, uses, or causes to be made or
> used, a false record or statement to get a false or
> fraudulent claim paid or approved by the Government;

> (3) conspires to defraud the Government by getting a
> false or fraudulent claim allowed or paid.

Rule 9(b) in turn requires that "in alleging fraud or mistake, a

party must state with particularity the circumstances

constituting fraud or mistake."  In the instant case, the

allegations of the Complaint as to PAE meet the requirements of

both the FCA and Rule 9.

The allegations of the Complaint include the following

minimum, pertinent allegations applicable to all of the

defendants[3].

> 3.    Plaintiff is the original source of all of the
>       allegations in this complaint.

> 4.    Plaintiff has direct and independent knowledge of the
>       allegations in this complaint specifically with regard
>       to the allegations arising from the contracts held by
>       the [sic] North American Telecommunications, Inc.
>       ("NATI").

> 31.   Bender personally witnessed . . . . NATI knowingly,
>       willfully, and recklessly submitt[ing] false claims for
>       reimbursement by falsely reporting work completed,
>       falsely reporting the time it took . . . to perform

---

[3]      Count I of the Complaint begins with Paragraph 142.

work and respond to requests for maintenance,
fraudulently billing for overtime, and fraudulently
charging the government for work performed by
unqualified workers.

36. [Bender's] information based upon his investigation is
that CTSI is currently [August, 2006] engaged iun the
same fraud against the Government.

37. The fraudulent practices [of NATI] remain in effect at
CTSI . . . .

39. [Bender] is the original source of the information
pursuant to [the FCA].

40. [As an original source Bender has] "direct and
independent knowledge of the information on which the
allegations are based" and [has] "voluntarily provided
the information to the Government before filing an
action".

41. [Bender] . . . personally witnessed the routine and
systematic violations of the [FCA].

45. NATI elicited additional funds beyond those specified
in the [contract] by fraudulently claiming monthly
bonuses.

63. NATI charged the Government a total of $909,271.44 by
fraudulently claiming entitlement to bonuses [for
response times] which it did not earn.

64. [Bender's] information is that this practice
[fraudulent bonuses for response times] continues under
CTSI, which employs the same managers to perform work
at the same site and earns bonuses for completion time
in a similar [fraudulent] fashion.

92. Under CTSI's contract the electrical work was performed
by a subcontractor [PAE] . . . . [PAE] continued to use
unlicensed electricians to perform the work for which
licensed electricians were required under the [USDA]
contracts.

96. NATI and CTSI fraudulently billed the Government for
overtime for work that the [USDA] contracts
specifically excluded from overtime.

126. [Bender's] information is that this practice
[fraudulent overtime billing] . . . continues under the
CTSI contract.

143. The defendants knowingly, willfully and recklessly
     claimed bonuses under the USDA contracts . . . based on
     response times and completion time . . . .

144. The defendants claimed to earn such bonuses based upon
     falsely stated response times . . . .

145. [The defendants] knowingly altered the record of the
     response times.

149. The defendants knowingly, willfully and recklessly
     misrepresented non-reimbursable . . . services . . . to
     be reimbursable.

152. [The defendants] knowingly altered the size of the
     repairs required.

156. Both NATI and CTSI charged the Government for work
     performed by workers who did not possess the
     qualifications required by contract.

158. All the work conducted by electrical workers . . . who
     were not properly licensed . . . has been falsely
     certified . . . .

163. The Defendants . . . engaged in a scheme to charge the
     government for overtime by making false claims
     including falsifying payroll records, providing workers
     with Compensation Time which is also prohibited on the
     record, and simply charging for overtime when overtime
     was not allowed under their contracts.

168. The defendants knowingly, willfully and recklessly did
     not perform thousands of hours for specific maintenance
     work required under the contract.

A.   Dismissal Of Counts I, II, IV and V.

    Plaintiff submits that the dismissal of Counts I, II, IV and

V as to PAE is premature.  Alternatively, if dismissal of one or

more of those Counts is warranted based upon the Complaint before

the Court, Plaintiff requests that such dismissal be with leave

to amend the Complaint within 60 days from the date of dismissal.

    With respect to Counts I, II, IV and V, the allegations of

the complaint, fairly read, allege that Bender, an original

source, had direct and independent knowledge of the falsification of response times, falsification of minor work orders, fraudulent billing for overtime, and fraudulent billing for work not performed, all of which occurred during the NATI contract and continued under the CTSI contract.  PAE, a subcontractor of CTSI and employer of former NATI employees, performed work and billed CTSI, who in turn billed the government, for its work at the USDA site.

Count I, at Paragraph 143, alleges that <u>all</u> defendants "knowingly, willfully and recklessly claimed bonuses under the USDA contracts"; Paragraph 144 alleges that <u>all</u> "defendants claimed to earn such bonuses based upon falsely stated response times"; Paragraph 145 alleges that <u>all</u> defendants "knowingly altered the record of the response times".

Count II, at Paragraph 149, alleges that <u>all</u> defendants "knowingly, willfully and recklessly misrepresented non-reimbursable . . . services . . . to be reimbursable"; at Paragraph 152 allesges that <u>all</u> defendants "knowingly altered the size of the repairs required".

Count IV, at Paragraph 163, alleges that <u>all</u> "Defendants . . . engaged in a scheme to charge the government for overtime by making false claims including falsifying payroll records, providing workers with Compensation Time which is also prohibited on the record, and simply charging for overtime when overtime was not allowed under their contracts.

Count V, at Paragraph 168, alleges that <u>all</u> "defendants knowingly, willfully and recklessly did not perform thousands of hours for specific maintenance work required under the contract."

Each of the allegations of Counts I, II, IV and V are based upon the knowledge of an original source. While perhaps in artfully pled, the Complaint nonetheless sets forth sufficient allegations, which, if proven, would establish the liability of PAE under the FCA. Accordingly, at least at this stage of the proceedings, a claim against PAE for participation in the falsification of response times, falsification of minor work orders, fraudulent billing for overtime, and fraudulent billing for work not performed, has been sufficiently alleged so as to require denial of the motion to dismiss those counts.

B.    <u>Dismissal of Count III</u>.

Count III specifically relates to allegations of fraud with respect to the use of unlicensed employees by PAE, for whose work PAE billed CTSI, who in turn billed the Government. Paragraph 92 in particular alleges that "[u]nder CTSI's contract the electrical work was performed by a subcontractor [PAE] . . . . [which] continued to use unlicensed electricians to perform the work for which licensed electricians were required under the [USDA] contracts." Paragraph 158 further alleges the work conducted by electrical workers . . . who were not properly licensed . . . has been falsely certified [to the Government] . . . ." Lastly, Paragraph 156 alleges that both NATI and CTSI

charged the Government for work performed by workers who did not possess the qualifications required by contract."

The allegations relating to Count III are from an original source, based on direct and independent knowledge.  Accordingly, that Count must not be dismissed as to PAE at this stage of the proceedings.

C.    Information within defendants' control.

Reduced to their essentials, the FCA and Rule 9 simply require that the allegations of false claims must be stated with particularity (Rule 9) and allege that a defendant "knowingly" submitted such false claims (31 U.S.C. 3729).  The FCA contemplates that particular information will be within the "control" of a defendant.  In fact, in the case of a former employee, the employee may have personal knowledge of the facts of the submission of false claims but rarely, if ever, will it be in his control.

Rule 9(b) simply states that allegations of fraud must state with particularity the circumstances constituting the fraud; it does not require a minute-by-minute recitation of facts surrounding those circumstances.  Rather, allegations of the circumstances will provide a defendant with sufficient notice upon which to base it answer or other defense.

Defendants rely upon U.S. ex rel Williams v. Martin-Baker Aircraft Co., Ltd., 363 U.S.App.D.C., 389 F.3d 1251 (2004) in support of its motion to dismiss for failure to comply with Rule 9(b).  In that case the Court upheld the dismissal of the FCA

counts due to lack of particularity as to time (no start date;
nebulous), individuals (laundry list of names), and the purported
fraudulent scheme. Williams, supra, 389 F.2d, at 1258,
U.S.App.D.C., at 426. In the instant case, like the plaintiff in
United States ex rel. Harris v. Bernad, 275 F.Supp.2d 1, 8-9
(D.D.C. 2003), Bender has alleged specific time and names, and
has set forth five separate fraudulent schemes.

Turning again to the Complaint as presented, the
circumstances surrounding the Defendants false claims are
abundantly clear. Put simply, Bender recites, as an original
source, that NATI and CTSI entered into contract with USDA, that
those defendants, acting through their named respective employees
or principals, engaged in the submission of (or caused to be
submitted) claims for payment under those contracts, submitted
(or caused to be submitted) false records or statements to get a
false or fraudulent claim paid or approved under those contracts,
and/or conspired to defraud the Government by getting a false or
fraudulent claim allowed or paid. Bender further alleged the
specific spans of time of the two contracts - October 1, 1997, to
March 31, 2003, and April 1, 2003, to the date of filing of the
Complaint. The Complaint alleges that the FCA violations took
place during the time of the two contracts.

As set forth above in detail, and in the Complaint itself,
the allegations are stated with a great degree of particularity
in light of Plaintiff's position as an electrician, and allege
that all of the Defendants, including PAE, "knowingly" submitted

the various false claims.[4]   To the extent, however, that the
omission of PAE by specific name, rather than as one of the
defendants, is determined not to be "stated with particularity",
then leave to amend should be granted.

Lastly, as the Williams court noted that

> "[i]t is certainly true that qui tam plaintiffs,
> frequently former employees of the parties they sue,
> often have difficulty getting access to their former
> employers' documents.  Accordingly, this circuit
> provides an avenue for plaintiffs unable to meet the
> particularity standard because defendants control the
> relevant documents-plaintiffs in such straits may
> allege lack of access in their complaint.  Kowal, 16
> F3d at 1279 n.3.  Neither in his complaint nor before
> the district court did Williams make any such
> allegations.

Williams, supra, 389 F.2d, at 1258, U.S.App.D.C., at 426.
Plaintiff concedes that he did not make that allegation in the
Complaint but asserts that argument here.  Plaintiff has alleged
that he was an electrician; he was not a corporate executive or
even a manager that would have had access at the complaint stage
to specific documents to support his FCA claims such as contract
payment requisitions, certified payrolls, and similar documents.
If this matter is dismissed with leave to amend, Plaintiff
certainly would include that allegation at the outset.

D.   Failure to assert that PAE caused CTSI to submit a
     false claim.

Again, the FCA simply requires that a defendant "knowingly"
submitted or caused to be submitted a false claim, or knowingly
makes or causes to be made a false record or statement to get a

---

[4]    Counts I, II and V specifically allege that the defendants
"knowingly" acted; Counts III and IV incorporate the prior
allegations.

false claim paid or approved.  In the case of a subcontractor, it does not require that the subcontractor caused the general contractor in turn to submit a false claim.  If such were the case, a subcontractor could "knowingly", and with impunity, submit a false claim to the general contractor without the general contractor's knowledge, which the general contractor would submit the government.  Neither logic nor the FCA permits a subcontractor submitting a fraudulent claim, false record, or statement to avoid liability.

**CONCLUSION**

For the foregoing reasons, the motion of PAE Government Services, Inc. to dismiss the Complaint must be denied.  In the alternative, if the Court does dismiss the Complaint, or any Count thereof, such dismissal should be with leave to amend within 60 days.

        **/s/** *Tarrant H. Lomax*
Tarrant H. Lomax (DC Bar No. 961409)
Tarrant H. Lomax, Esq., P.C.
940 Bay Ridge Avenue
Annapolis, MD 21403
Phone: 410.267.6151
Fax: 410.263.6785
Email: lomaxlaw@comcast.net

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 12th  day of June, 2008, I transmitted a copy of foregoing pleading by first class mail, postage prepaid, and/or electronic service, as appropriate, to the following:

    United States Attorney
    Judiciary Center Building
    555 Fourth Street, NW
    Washington, DC 20530

    Attorney General of the United States
    United States Department of Justice
    Tenth Street and Constitution Avenue, NW
    Washington, DC 20530

    David U. Fierst, Esq.
    Stein, Mitchell & Mezines
    1100 Connecticut Avenue, NW, Suite 1100
    Washington, DC 20036

    James A. Bensfield, Esq.
    Mary Lou Soller, Esq.
    655 Fifteenth Street, NW, Suite 900
    Washington, DC 20005-5701


/s/ Tarrant H. Lomax

Tarrant H. Lomax

C:\Documents and Settings\Tarrant Lomax\Desktop\THL PC\Client Files\Bender, Keith\Dismiss - PAE Opposition.wpd